```
                UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF MISSISSIPPI
                      JACKSON DIVISION
```

AMBER ARD                                              PLAINTIFF

VS.                              CIVIL ACTION NO. 3:12CV2TSL-MTP

STEVE RUSHING, ET AL.                                 DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendant Sheriff Steve Rushing for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff Amber Ard opposes the motion, and the court, having considered the parties' memoranda, together with attachments, concludes that the motion is well taken and should be granted.

Plaintiff Amber Ard filed this action pursuant to 42 U.S.C. §§ 1983 and 1985 against defendant Steve Rushing, Sheriff of Lincoln County, Mississippi, and former sheriff's deputy Tim Miller,[1] asserting claims for violation of the Fourth, Fifth and Eighth Amendments, and also alleging a state law claim for negligence, relating to an incident in which she was sexually assaulted by defendant Miller while she was incarcerated at the

---

[1] While plaintiff also named Lincoln County as a defendant, this was unnecessary as she sued Sheriff Rushing in both his individual and official capacities. See Travis v. Hawkins, 381 F.3d 407, 414 (5th Cir. 2004) (stating that suit against state official in his or her official capacity is not suit against official but rather is suit against official's office); Brooks v. George County, Miss., 84 F.3d 157, 165 (5th Cir. 1996) ("Brooks's suit against Sheriff Howell in his official capacity is treated as a claim against George County.").

Lincoln County Jail. According to Ard's complaint, she was arrested on June 9, 2010 by the Lincoln County Sheriff's Department and placed in a jail cell on the upper floor of the facility, which had been designated for female inmates and where only female guards were allowed. Early on the morning of June 11, 2010, Ard, who was at the time the only inmate housed on the upper floor, was awakened by Miller, who offered her cigarettes and began making sexual remarks and advances toward her. She refused his offers and demanded that Miller leave her cell. At the time, Miller appeared calm and rational, and left.

Early the next morning, June 12, an agitated Miller awakened Ard and forced her into a small room with a padded mat on the floor. Miller then sexually assaulted Ard. According to the complaint, Ard did not report the rape to jail officials that day because she was under constant watch by other male guards by whom she felt threatened. Instead, she reported the rape the next day when a female deputy, Tosha Williams, began her shift at the jail. Ard was transported to the hospital where she was examined and found to have been sexually assaulted. Within a week of Ard's having reported the rape, Rushing terminated Miller's employment. Miller was subsequently arrested for sexual assault and subsequently pled guilty to sexual penetration of an incarcerated individual.

By the present motion, Sheriff Rushing seeks dismissal on qualified immunity grounds of Ard's § 1983 and § 1985 claims against him in his individual capacity. Ard maintains that genuine issues of material fact preclude summary judgment on the sheriff's qualified immunity defense. For the reasons that follow, the court concludes that Rushing is entitled to qualified immunity.

"[G]overnment officials performing discretionary functions generally ... are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Wilson v. Layne, 526 U.S. 603, 609, 119 S. Ct. 1692, 1696, 143 L. Ed. 2d 818 (1999) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). "What this means in practice is that whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful action generally turns on the 'objective legal reasonableness' of the official's action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." Id. (quoting Anderson v. Creighton, 483 U.S. 635, 639, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)). When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense. See Bazan ex rel. Bazan v. Hidalgo County, 246 F.3d 481, 489 (5th Cir. 2001). Thus,

3

the doctrine of qualified immunity shields federal and state officials from money damages unless a plaintiff shows "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, --- U.S. ----, ----, 131 S. Ct. 2074, 2080, 179 L. Ed. 2d 1149 (2011).

To resolve the applicability of a qualified immunity defense, the court employs a two-pronged test.[2] The first prong requires the court to consider "whether the challenged conduct, viewed in the light most favorable to the plaintiff, would actually amount to a violation of [constitutional or] federal law." Wernecke v. Garcia, 591 F. 3d 386, 392 (5th Cir. 2009) (internal citations and quotation marks omitted). If the plaintiff failed to allege a violation of a constitutional right, then the analysis ends. Whittington v. Maxwell, 455 Fed. Appx. 450, 456 (5th Cir. Dec. 22, 2011) (citations omitted). Secondly, if the conduct would amount to a violation of plaintiff's constitutional rights, the court then considers "whether the defendant's actions were objectively

---

[2] In Pearson v. Callahan, the Court concluded that the two-step sequence was no longer mandatory, stating that "while the [two-step] sequence ... is often appropriate, it should no longer be regarded as mandatory," and giving lower courts "permi[ssion] to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009).

4

unreasonable in light of clearly established law at the time of the conduct in question." Id.

In the present case, although Ard's complaint is cast in terms of putative violations of the Fourth, Fifth and Fourteenth Amendments, her constitutional rights necessarily flow from the Eighth Amendment's prohibition against cruel and unusual punishment since she was incarcerated for a probation violation at the time of the assault by Miller. See Hare v. City of Cornith, 74 F.3d 633, 639 (5th Cir. 1996). Rushing interprets Ard's complaint as asserting two possible Eighth Amendment individual capacity claims against him, the first based on his alleged failure to protect her from Miller's sexual assault, see Payne v. Parnell, 246 Fed. Appx. 884, 889 (5th Cir. Sept. 5, 2007) ("[t]o state a failure to protect claim under § 1983, [plaintiff] must show that [she] [was] incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to [her] need for protection"), and the second premised on a failure to train and/or supervise theory, see Lewis v. Pugh, 289 Fed. Appx. 767, 771-72 (5th Cir. Aug. 18, 2008) (where supervisor is not personally involved with acts causing deprivation of constitutional rights, to impose liability plaintiff must show: "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation

of [her] rights; and (3) the failure to train or supervise amounts to deliberate indifference.") (internal citation and quotation omitted).[3]

It is not disputed that Ard has alleged the violation of a clearly established constitutional right. See Stockman v. Lowndes County, Mississippi, 2000 WL 33907696, *2 (N.D. Miss. Aug. 21, 2000 (holding "sexual assault on an inmate by a guard, regardless of the gender of the guard or of the prisoner, is deeply offensive to human dignity") (citing Schwenk v. Hartford, 204 F.3d 1187, 1197 (9th Cir. 2000), and Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) ("Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'")). The focus, then, is on the second prong of the qualified immunity

---

[3] The complaint additionally seeks to impose liability for conspiracy under § 1985(3) on the basis that "defendants, including Sheriff Rushing, knew that male officers including Tim Miller often had unsupervised and unfettered access to female inmates," and despite this knowledge, failed to implement policies preventing such access. Rushing has also asserted qualified immunity as to this claim, contending that Ard cannot demonstrate pertinent elements of her conspiracy claim, namely, that Sheriff Rushing made any agreement with any person to commit acts which would deprive her of equal protection of the law or took any act in furtherance of any such conspiracy, or that the alleged conspiracy was motivated by any prohibited animus. See Wong v. Stripling, 881 F.2d 200, 202-03 (5th Cir. 1989)(setting forth, inter alia, elements of § 185(3) conspiracy claim). Ard has offered no response to Rushing's qualified immunity argument as to the conspiracy claim, and the court finds that Rushing is immune as to this claim.

6

analysis, whether the sheriff's actions were objectively reasonable.

To overcome a claim of qualified immunity in the context of an alleged failure to protect in violation of the Eighth Amendment, this second prong has two subparts: "First, the plaintiff must show that there was a 'substantial risk of serious harm[,]" [and] [s]econd, the plaintiff must show that the prison official was deliberately indifferent to that risk." Morgan v. Hubert, 459 Fed. Appx. 321, 324, 2012 WL 171605, 3 (5th Cir. 2012) (quoting Farmer, 511 U.S. at 834, 114 S. Ct. 1970). "Deliberate indifference is shown by proving 'the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Farmer); see also Payne v. Parnell, 246 Fed. Appx. at 889-90 (stating that "[f]or an official to act with deliberate indifference ..., he 'must both be aware of facts from which an inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference'") (quoting Farmer). The Fifth Circuit has stated that

> [t]he deliberate indifference standard is "an extremely high standard to meet." Domino v. Tex. Dep't of Criminal Justice, 239 F. 3d 752, 756 (5th Cir. 2001). We have declined to find deliberate indifference where an official "should have" inferred a risk posed to an inmate, requiring proof that the official "did draw such an inference." Adames, 331 F.3d at 514; see also

7

> Farmer, 511 U.S. at 838, 114 S. Ct. 1970; <u>Hare v. City of Corinth, Miss.</u>, 74 F.3d 633, 650 (5th Cir. 1996) (<u>en banc</u>). Nevertheless, an inmate does not have to produce direct evidence of an official's knowledge about the risk; he may rely on circumstantial evidence to demonstrate such knowledge. <u>See Farmer</u>, 511 U.S. at 842, 114 S. Ct. 1970; <u>Adames [v. Perez</u>, 331 F.3d 508, 512 (5th Cir. 2003)]. For example, an inmate can prove the requisite knowledge by showing that conduct or occurrences were "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past" such that officials had subjective knowledge of the complained risk. <u>See Farmer</u>, 511 U.S. at 842–43, 114 S. Ct. 1970 (internal quotation marks omitted); <u>Adames</u>, 331 F.3d at 512.

<u>Anderson v. Wilkinson</u>, 440 Fed. Appx. 379, 381-82 (5th Cir. Sept. 8, 2011).

Regarding the alleged failure to protect claim, Rushing asserts that Ard cannot show that she was housed under conditions which posed a substantial risk of serious harm or, even if so, that he was deliberately indifferent to her need for protection. In support of his position, Rushing has offered evidence which establishes that in November 2009, he enacted a policy forbidding male jailers from having one-on-one contact with female inmates. In furtherance of this policy, a sign reading "<u>NO MALE JAILERS</u> ARE TO ENTER THE FEMALE'S CELL WITH OUT A FEMALE JAILER OR DISPATCHER WITH THEM. NO EXCEPTIONS" was posted just outside the temporary, female area upstairs in the jail, as well as near the normal female area on the first floor. To further ensure safety of the female prisoners, the temporary housing area was located behind three keyed locked doors and was monitored by a camera providing a

live video feed that captured any person going through the first locked doorway to the female area. Video feed from the camera played on monitors in the guard room and in the control room with the guard room being monitored by a single jailer and the control room being staffed twenty-four hours a day, seven days a week. Rushing testified that it was also his policy and practice to establish work schedules so as to ensure that a female jailer was "on shift" twenty-four hours a day, seven days a week. He further testified that, at the time of Miller's assault, the cells in the female block were equipped with intercoms for inmates to contact jailers in the control room if a problem or need arose. Based on this evidence, Rushing submits that Ard was not housed under conditions which posed a substantial risk of serious harm.

On the issue of deliberate indifference, Rushing has presented evidence that he was present in the jail daily and received twice daily briefings related to the jail, yet prior to Miller's assault on plaintiff, he had no knowledge that Miller or any other jailers were entering the female cell block and gaining one-on-one access to female inmates. With reference to Miller specifically, Rushing acknowledges that in 2006, a female inmate accused Miller of unwanted sexual contact and made additional allegations that Miller had engaged in sex with other female

9

inmates;[4] and he further acknowledges that in 2009, there was a jailhouse rumor that Miller had asked a female inmate to show him her breast. He points out, however, that both instances of alleged sexual misconduct were investigated and neither was substantiated. Indeed, the evidence establishes that at the request of the Sheriff's Department, the Mississippi Bureau of Investigation (MBI) conducted an investigation of the 2006 allegations, which included interviewing Miller's alleged accuser and other female inmates with possible knowledge; and following the investigation, the MBI's investigator advised jail officials, specifically, Major Dustin Bairfield, that there was nothing to the inmate's allegation. No criminal charges were filed and the complainant did not pursue any civil claim.

As regards the 2009 rumor that Miller had asked a female inmate to show her breast, the chief deputy assigned by Rushing to conduct the investigation spoke to each female inmate housed at the jail and no female inmate reported having received such a request, having heard Miller make such a request to another inmate

---

[4] Although he acknowledges this situation, Rushing asserts he has no personal recollection of it. Rushing attributes his lack of recollection to the fact that the 2006 allegations surfaced only two weeks after his having first been elected sheriff and the fact that the Mississippi Bureau of Investigation, and not the Lincoln County Sheriff's Department, conducted the investigation.

or having heard from another inmate that such a request had been made.

Rushing maintains that since none of the allegations against Miler were substantiated, there was no pattern of similar violations, so that even if he had been personally aware of the allegations against Miller, it cannot be said he acted with deliberate indifference to the risk that Miller's presence in the jail posed to female inmates.

Plaintiff argues in response that regardless of steps he may have taken to prevent male jailers from gaining one-on-one access to female prisoners, Rushing knew that there had been allegations of sexual misconduct by Miller in 2006 and 2009 and thus knew that Miller's presence as a jailer created a substantial risk of harm to female inmates, including Ard. She maintains that Rushing was deliberately indifferent to this risk of harm, as he not only failed to discipline Miller in any way for his unauthorized access to the female areas of the jail but he actually promoted him to shift supervisor, which gave him unfettered access to female-only areas. Ard also complains that, apart from the sign which was posted outside the female area, Rushing not only failed to implement any other procedural safeguards[5] to ensure there was no

---

[5] Plaintiff suggests that Rushing should have posted a guard directly outside the female area or required male jailers to sign a log book upon entering the female area, which would also have reflected the name of the accompanying female jailer.

11

unsupervised entry into the female area by male jailers, but also failed to adequately staff the jail with female employees, as evidenced by Miller's testimony that occasionally there was no female jailer working a shift. Ard also contends that the camera placed by Rushing never accomplished its goal inasmuch as Rushing could not recall having ever disciplined a male jailer due to having been caught on the camera, "although Tim Miller clearly accessed such areas without a female escort on several occasions."

Having carefully considered the evidence and arguments, the court must conclude that the factual predicate which Ard has presented does not create an issue of fact on the question of whether Rushing was deliberately indifferent to a substantial risk of harm. As stated above, the record demonstrates that Rushing did have in place safeguards to ensure the safety of female prisoners. That is, Rushing had a female-only, camera-monitored area in which female inmates were housed. Rushing further enacted a policy that male jailers could not enter the female-only area without a female jailer and a policy that a female jailer was to cover each shift. Without more, plaintiff's proof that Miller testified he violated the policy or that occasionally a female employee failed to report for her assigned shift does not diminish the fact that Rushing had in place a set of safeguards to protect female inmates.

12

Regarding Rushing's state of mind, Rushing states that prior to Miller's rape of Ard, he was unaware that Miller or any other male jailer was entering the female area and gaining one-on-one access. Plaintiff attempts to establish the requisite element of knowledge circumstantially, based on the prior allegations of sexual misconduct involving Miller. However, even assuming that Rushing was aware of those earlier allegations prior to Miller's rape of Ard, the record evidence establishes without dispute that in 2006, when those earlier allegations were made, the sheriff's office referred the matter to an outside state investigatory agency, which investigated and reported to the sheriff's office that "there was nothing to" the allegations. Likewise, Rushing had the 2009 allegations of inappropriate behavior investigated and the result again was that the charge was not substantiated. Plaintiff has fallen short of showing that Miller had a long-standing, well-documented pattern of inappropriate sexual behavior toward female inmates such that Rushing reasonably could be found to have had subjective knowledge of the risk of harm posed by Miller. Accordingly, plaintiff cannot overcome Rushing's asserted qualified immunity defense on her claim based on a failure to protect.

As to plaintiff's second claim, for failure to train/ supervise, Rushing questions the continued viability of supervisory liability following the Supreme Court's decision in

13

Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937 (2009),[6] but he asserts that even if there can be a cognizable claim for failure to train/supervise, Ard cannot prove that he failed to train or supervise Miller or, even if he did, that his conduct amounted to deliberate indifference.  The court notes that Ard's response to Rushing's motion focuses nearly entirely on her failure-to-protect claim.  Regarding her failure to train/ supervise claim, Ard points out only that Miller, upon being hired as a jailer, was not given any written policies or procedures regarding male jailers' interactions with females.  Even assuming the continued viability of supervisory liability following Iqbal, as Rushing points out, Miller admittedly had notice of Rushing's policies and procedures regarding the male jailers' interactions with female inmates and plaintiff has failed to come forward with proof which would create a fact issue as to Rushing's knowledge of Miller's disregard of the policy.  Moreover, Ard has not established an issue of fact as to whether Rushing was deliberately indifferent. See Payne v. Parnell, 246 Fed. Appx. 884, 889 (5th Cir. Sept. 5, 2007) (setting forth, inter alia, elements of cause of action for failure to train/supervise, including that failure to train or supervise

---

[6] See Hernandez v. Horn, 410 Fed. Appx. 819, 820 (5th Cir. Feb. 9, 2011) ("Although this Circuit has not had an opportunity to confirm its case law accordingly, other federal courts have recognized that claims for failure to supervise and failure to train—the substance of plaintiffs' complaint in this case—are exactly the types of claims that Iqbal forecloses.").

14

amounts to deliberate indifference); Andrews v. Fowler, 98 F.3d 1069 (8th Cir. 1996) (internal quotations and citation omitted) (observing that "[i]t is necessary to show that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need" and holding "[i]n light of the regular law enforcement duties of a police officer, we cannot conclude that there was a patently obvious need for the city to specifically train officers not to rape young women"). She has thus failed to establish the elements of her failure to train/supervise claim, and it is clear that Rushing is entitled to immunity as to this claim as well.

Based on the foregoing, it is ordered that defendant's motion for summary judgment is granted.

SO ORDERED this 23nd day of August, 2012.

/s/Tom S. Lee
UNITED STATES DISTRICT JUDGE

15