# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 14-60282

United States Court of Appeals
Fifth Circuit

**FILED**

December 29, 2014

Lyle W. Cayce
Clerk

AMBER ARD,

      Plaintiff - Appellant

v.

STEVE RUSHING, Individually and in his official capacity as Sheriff of
Lincoln County, Mississippi; LINCOLN COUNTY, MISSISSIPPI,

      Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 5:13-CV-249

Before KING, JOLLY, and COSTA, Circuit Judges.

PER CURIAM:[*]

      This action arises out of Plaintiff-Appellant Amber Ard's June 2010 incarceration in the Lincoln County Jail, during which, according to Ard, former jailer Timothy Miller sexually assaulted her. Ard brought suit alleging various claims arising from this incident against Sheriff Steve Rushing—in his individual and official capacities—and against Lincoln County, Mississippi.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-60282

Ard appeals: (1) the district court's dismissal of her state law negligence claims; (2) the district court's grant of summary judgment as to her claims pursuant to 42 U.S.C. §§ 1983, 1985, and 1986; and (3) the district court's denial of her motion requesting discovery sanctions and seeking to reopen discovery. For the reasons below, we affirm the judgment of the district court.

## I.    Factual and Procedural Background

### A. Factual Background

Plaintiff-Appellant Amber Ard was arrested on June 9, 2010 for a drug-related probation violation. That day, she was booked at the Lincoln County Jail ("LCJ") and was taken upstairs to an area of the LCJ temporarily being used to house female inmates. Female inmates are typically housed on the first floor of the LCJ. However, at the time Ard was incarcerated, the female housing area on the first floor was being renovated. Sheriff Steve Rushing, who oversees the LCJ, chose to temporarily house all female inmates upstairs during that time.

To enter this temporary female housing area, one must go up a set of stairs, through a key-locked door, down a hallway, through another key-locked door, through a room, and through a third key-locked door. All three doors were kept locked at all times, although the LCJ jailers had access to keys for these doors. The female housing area was also equipped with an intercom for inmates to contact jailers in the control room when a problem arose. In addition, the hallway had a camera providing a live video feed, which played on monitors in the upstairs guard tower and in the downstairs control room. The upstairs guard tower is usually staffed with a jailer on each shift, as is the control room. There were no cameras in the area immediately surrounding the individual female cells.

During Ard's detention, there were signs posted just outside both the temporary female housing area and the permanent female housing area,

No. 14-60282

stating: "NO MALE JAILERS ARE TO ENTER THE FEMALE'S CELL WITH OUT [sic] A FEMALE JAILER OR DISPATCHER WITH THEM.  NO EXCEPTIONS!!!"  This policy was not written elsewhere.  Jailers were not required to sign any ledger or list to access the female housing area.  Rather, Rushing relied on the guards monitoring the cameras to inform him, his chief deputy, or the warden, if there was a violation of the policy prohibiting male jailers from entering female inmates' cells unaccompanied.  Rushing could not recall whether he had ever disciplined a jailer for violating that policy. Rushing contends that there is typically at least one female jailer working per shift, although there is some evidence in the record that female jailers were not always available.

Ard contends that in the early morning hours of June 11, 2010, prior to the lights being turned on in the female housing unit, jailer Timothy Miller— a shift supervisor—appeared in her cell at the foot of her bed.  When she saw him, she jumped up and asked him what he was doing in her cell.  Miller offered Ard cigarettes, which she accepted.  As Miller was leaving her cell, according to Ard, he asked her what she would do for him in return for the cigarettes. Ard responded that he should "go home and get that from [his] wife."  Miller then left the cell.  Miller purportedly appeared in her cell the following morning, again before the lights were turned on.  Miller made sexual advances toward Ard and asked her to have sex with him.  According to Ard, she refused, and Miller left.  Later that morning, Miller allegedly returned to Ard's cell, took her by the arm, forced her into a cell next door and attempted to make Ard perform oral sex on him; Ard resisted.  Miller then shoved Ard down, opened her legs, and forcibly penetrated her.  Ard reported the incident the following evening.  When Rushing learned of the incident, he contacted the Mississippi Bureau of Investigation ("MBI"), and an investigation ensued. Soon after, Rushing fired Miller for violating the policy prohibiting male jailers

No. 14-60282

from entering a female's cell unaccompanied by a female jailer or dispatcher. Miller ultimately pleaded guilty to a charge of sexual contact with an inmate, though he maintains that his sexual contact with Ard was consensual. Miller has also stated that, on the date of the alleged rape, he was called to check the toilets in the female housing area, attempted to locate a female jailer to accompany him, but could not locate one.

Ard contends that Rushing and Lincoln County were aware of prior instances of sexual misconduct involving Miller. First, Ard points to an allegation by former LCJ inmate Sonya Smith ("S. Smith") that she was sexually assaulted by Miller in October 2006—several weeks after Rushing was appointed as Sheriff of the LCJ. S. Smith alleged that Miller entered her cell, unaccompanied by a female guard, and sexually assaulted her. S. Smith also alleged that Miller had sexual relationships with other female inmates. The LCJ's acting major learned of S. Smith's allegations and contacted the MBI. The MBI conducted an investigation and informed the acting major that there was "nothing to" the allegations; no charges resulted.[1] Rushing contends that he has no recollection of the incident, which occurred several weeks after he was appointed as Sheriff of the LCJ. However, there is evidence showing that an MBI investigator met with Rushing regarding the allegations on October 31, 2006. S. Smith has also stated that she met with Rushing regarding her allegations.

Second, in 2009, there was a jailhouse rumor that Miller had asked a female inmate to show him her breasts. This rumor prompted an investigation by the LCJ's chief deputy, who interviewed each female inmate at the LCJ. The rumor could not be substantiated, as no female inmate had heard the

---

[1] According to the MBI's investigation report, several female inmates stated to the MBI that they had heard that Miller had sexual encounters with various inmates. However, these rumors could not be corroborated.

No. 14-60282

statement either first or secondhand. Miller denied the rumor as well. Nonetheless, as the result of the rumor, Rushing posted the signs regarding male jailer access to the cells of female inmates in November 2009.

Finally, Ard relies on allegations of sexual assault against Miller by another former inmate, Crystal Gayle Smith ("C.G. Smith"). On August 16, 2012, C.G. Smith filed a lawsuit against Rushing, Lincoln County, and Miller, based on those allegations. C.G. Smith contends that she was raped by Miller in November 2009 while she was an inmate at the LCJ. She states that she provided a statement to the District Attorney for Pike and Lincoln counties about the incident. According to Truett Simmons, an investigator with the District Attorney's Office for Lincoln, Pike, and Walthall counties, he took a statement from C.G. Smith regarding the incident on August 26, 2010. There is no evidence that C.G. Smith disclosed her allegations to anyone else prior to providing this statement, and Rushing contends that he was not aware of any such allegations prior to the suit being filed.

## B. Procedural Background

Ard filed this case in Mississippi state court on November 23, 2011 against Miller, in his individual and official capacities, Rushing, in his individual and official capacities, and Lincoln County. Her complaint asserts Section 1983 claims for violations of the Fourth, Fifth, and Fourteenth Amendments, a conspiracy claim under Section 1985(3), and negligence claims under Mississippi state law. Defendants removed this action to the United States District Court for the Southern District of Mississippi.

Rushing and Lincoln County moved to dismiss Ard's state law claims. The district court granted the motion, reasoning that those claims were barred by the Mississippi Tort Claims Act. Rushing then filed a motion for summary judgment with respect to the claims remaining against him in his individual capacity, asserting qualified immunity. The district court granted the motion,

No. 14-60282

concluding that "the factual predicate which Ard has presented does not create an issue of fact on the question of whether Rushing was deliberately indifferent to a substantial risk of harm." The court also determined that Ard had waived her claim under Section 1985(3) as against Rushing in his individual capacity. Lincoln County and Rushing, in his official capacity, moved for summary judgment on the remaining Section 1983 and 1985 claims. Before the district court ruled on the motion, Ard also moved for sanctions and to reopen discovery based on Defendants' alleged failure to timely produce the August 2010 statement from C.G. Smith. The district court resolved both motions in a memorandum opinion and order. The court granted the motion for summary judgment as to the Section 1983 claims, reasoning that Ard "failed to present evidence that any official policy was the moving force behind" any constitutional violation. The court also granted the motion as to the Section 1985(3) claim, as Ard failed to allege discriminatory animus on the part of Defendants. Finally, the district court denied Ard's motion for sanctions, as there was "nothing to indicate that Sheriff Rushing, Lincoln County or their counsel was aware of [C.G. Smith's August 2010] statement or had been provided a copy of that statement prior to November 2013, when counsel received a copy of the statement from Miller's attorney in the [C.G.] Smith lawsuit."

The district court entered partial final judgment as to the claims against Rushing and Lincoln County. Ard timely appeals.

## II.    Standard of Review

We review de novo a district court's order granting a defendant's motion for summary judgment, applying the same standard as did the district court. *See Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 163 (5th Cir. 2006). "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment

6

No. 14-60282

as a matter of law.'" *Johnston & Johnston v. Conseco Life Ins. Co.*, 732 F.3d 555, 561 (5th Cir. 2013) (quoting Fed. R. Civ. P. 56(a)). We view the evidence in the light most favorable to the non-moving party. *United Fire & Cas. Co. v. Hixson Bros., Inc.*, 453 F.3d 283, 285 (5th Cir. 2006).

With respect to claims brought under 42 U.S.C. § 1983, government officials performing discretionary functions are entitled to qualified immunity, i.e., they "'generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *McClendon v. City of Columbia*, 305 F.3d 314, 322 (5th Cir. 2002) (en banc) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "[W]hen a defendant invokes the defense of qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *Kitchen v. Dallas Cnty.*, 759 F.3d 468, 476 (5th Cir. 2014). "The two-part inquiry into qualified immunity is first 'whether a constitutional right would have been violated on the facts alleged,' and second 'whether the right was clearly established' at the time of violation. *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 200 (2001)). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

"The denial of Rule 37 sanctions is reviewed only for abuse of discretion." *Johnson v. Sears Roebuck & Co.*, 66 F. App'x 523, No. 02-31169, 2003 WL 21016128, at *1 (5th Cir. Apr. 9, 2003) (per curiam) (unpublished); *cf. Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012) ("A district court's imposition of sanctions pursuant to Rule 37(b) is reviewed for an abuse of discretion."). This court similarly reviews a district court's denial of a motion to reopen discovery for abuse of discretion. *See Marathon Fin. Ins., Inc., RRG v. Ford Motor Co.*, 591 F.3d 458, 469 (5th Cir. 2009). "Th[is]

No. 14-60282

standard of review poses a high bar; a district court's discretion in discovery matters will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse." *Id.* (internal citation and quotation marks omitted). Thus, "[t]his court will disregard a district court's discovery error unless that error affected the substantial rights of the parties." *Id.* (internal citation and quotation marks omitted).

## III.  Discussion

### A. Waiver

Ard has waived: (1) her state law claims; (2) her Section 1983 claims against Sheriff Rushing in his official capacity and against Lincoln County; and (3) her Section 1985(3) claim.

With respect to her state law claims, Ard only alludes to them in her briefing on appeal.  She mentions them in her statement of the issues, where she asks: "Did the District Court err in adjudicating that the Sheriff of Lincoln County was individually immune from charges concerning his failure to comply with federal [sic] and concerning his *liability on state law claims*?" (emphasis added).  Nonetheless, "[i]t is not enough to merely mention or allude to a legal theory." *United States v. Scroggins*, 599 F.3d 433, 446 (5th Cir. 2010) (internal quotation marks omitted).  "At the very least, [an appellant must] clearly identify[] a theory as a proposed basis for deciding the case—merely intimating an argument is not the same as pressing it." *Id.* at 447 (internal citation, quotation marks, and brackets omitted).  Because Ard makes no substantive arguments regarding the dismissal of her state law claims, she has waived any challenge to those claims on appeal.

With respect to her Section 1983 claims against Sheriff Rushing in his official capacity and against Lincoln County, Ard fails to put forward any

No. 14-60282

specific theory as to municipal liability.[2] She discusses neither the standard for municipal liability under Section 1983 nor caselaw relevant to such claims. Merely mentioning Lincoln County throughout her brief is insufficient. Accordingly, these claims too are waived. *See Scroggins*, 599 F.3d at 447 ("[A]mong other requirements to properly raise an argument, a party must ordinarily identify the relevant legal standards and any relevant Fifth Circuit cases." (internal citation and quotation marks omitted)).

Finally, Ard has waived her claim pursuant to 42 U.S.C. § 1985(3), as she never addressed that claim in her briefing before the district court. *See LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007) ("[A]rguments not raised before the district court are waived and cannot be raised for the first time on appeal.").

## B. Section 1983 Claims Against Rushing Individually

We first address under which constitutional amendment Ard's claims should be analyzed. In its first summary judgment order, the district court determined that Ard's claims "flow from the Eighth Amendment's prohibition against cruel and unusual punishment." The district court then reversed course in its second summary judgment order, concluding that because Ard was in custody awaiting a probation revocation hearing, her claims should instead be analyzed under the Fourteenth Amendment.[3]

In *Hare v. City of Corinth,* 74 F.3d 633 (5th Cir. 1996) (en banc), we concluded that "[t]he constitutional rights of a convicted state prisoner spring from the Eighth Amendment's prohibition on cruel and unusual punishment,"

---

[2] The claims against Rushing in his official capacity are treated as claims against Lincoln County. *See Brooks v. George Cnty.*, 84 F.3d 157, 165 (5th Cir. 1996) ("Brooks's suit against Sheriff Howell in his official capacity is treated as a claim against George County.").

[3] The district court did not address, and Ard has not briefed below or on appeal, the purported Fourth and Fifth Amendment claims listed in her complaint. Therefore, those claims have been waived. *See Scroggins*, 599 F.3d at 446–47.

No. 14-60282

while "[t]he constitutional rights of a pretrial detainee . . . flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment." *Id.* at 639. A probationer awaiting a revocation hearing, such as Ard, does not fit neatly within this dichotomy. However, we addressed a similar scenario in *Hamilton v. Lyons*, 74 F.3d 99 (5th Cir. 1996), concluding that in suits brought by detained parolees, both the Fourteenth and Eighth Amendment standards apply. *See id.* at 106 & n.8.

In any event, the analysis under the Fourteenth and Eighth Amendments is identical in this case. In *Hare*, we held that where "a pretrial detainee's claim is based on a jail official's episodic acts or omissions"—as opposed to "general conditions, practices, rules, or restrictions of pretrial confinement"—the Fourteenth Amendment standard is the same as that under the Eighth Amendment. *Hare*, 74 F.3d at 643. That is, "liability . . . cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk." *Id.* at 650.[4] The case at hand is clearly one that involves an episodic act or omission—i.e., Miller's alleged sexual assault on Ard. *See Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (en banc) ("[T]he actual *harm* of which [plaintiff] complains is the sexual assaults committed by [defendant] during the one eight-hour shift—an episodic event perpetrated by an actor interposed between [plaintiff] and the city, but allegedly caused or permitted by the aforesaid general conditions."). Therefore, the deliberate indifference standard applies here.[5]

---

[4] In cases challenging general conditions of confinement, the inquiry is instead whether the pretrial detainee was "subjected to conditions or restrictions that are not reasonably related to a legitimate governmental purpose." *Id.* at 640.

[5] Furthermore, at oral argument, Ard's counsel conceded that this is the appropriate standard.

No. 14-60282

Ard's Section 1983 allegations are premised on a "failure to protect" theory. To establish such a claim, Ard "must show that [s]he [was] incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to h[er] need for protection." *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995). Because Ard cannot make this showing, this case can be resolved on the first qualified immunity prong— i.e., "whether a constitutional right would have been violated on the facts alleged." *Saucier*, 533 U.S. at 200.

"Deliberate indifference is an extremely high standard to meet." *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Mere negligence on the part of prison officials is insufficient. *Hare*, 74 F.3d at 645–46. "A state actor's failure to alleviate 'a significant risk that he should have perceived but did not,' while 'no cause for commendation,' does not rise to the level of deliberate indifference." *McClendon*, 305 F.3d at 326 n.8 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Accordingly, "[a] prison official acts with deliberate indifference 'only if [(A)] he knows that inmates face a substantial risk of serious bodily harm and [(B)] he disregards that risk by failing to take reasonable measures to abate it.'" *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Farmer*, 511 U.S. at 847). Even assuming Miller's presence in the LCJ constituted a substantial risk of serious bodily harm to Ard, Ard has failed to put forward sufficient evidence establishing that Rushing had subjective knowledge of such a risk. The district court correctly concluded that the alleged prior incidents of misconduct on the part of Miller could not have placed Rushing on notice that Miller posed a substantial danger to female inmates.

Ard first relies on allegations from S. Smith that Miller sexually assaulted her in October 2006. Although Rushing contends that he has no recollection of the incident, Ard has pointed to facts raising a genuine dispute

11

as to Rushing's knowledge. However, this dispute is not *material*, as an independent body—the MBI—concluded that there was "nothing to" these allegations. We note that the MBI's investigation—which resulted in an informal, one-page report—may have been less than rigorous. But even assuming Rushing was negligent in relying on such an investigation, the MBI's report contained only uncorroborated allegations of Miller's misconduct, and thus cannot establish that Rushing had subjective knowledge of a substantial risk of serious harm.

For similar reasons, the jailhouse rumor that Miller asked a female inmate to show him her breasts also fails to raise a genuine issue of material fact as to whether Rushing was deliberately indifferent. This rumor prompted an internal investigation—involving interviews of each female inmate at the LCJ. It too was found to be unsubstantiated as each female inmate denied hearing any such comment from Miller. Therefore, this incident also would not have caused Rushing to believe that Miller posed a threat to female inmates.

With respect to Miller's alleged sexual assault on C.G. Smith, there is no evidence suggesting that Rushing was aware of this incident prior to Miller's alleged assault on Ard. These allegations became public when C.G. Smith filed a lawsuit stemming from the incident on August 16, 2012; Rushing contends he had never heard of this allegation until this time. There is no evidence supporting Ard's contention that "prior to June of 2010, [C.G.] Smith made the fact of this rape known to Sheriff Rushing." Rather, C.G. Smith only speculates in her affidavit that Miller's misconduct "happened too often for the Sheriff, Steve Rushing, not to have known about it." Ard also points to C.G. Smith's statement, also in that affidavit, that she "gave a statement to the District Attorney for Pike and Lincoln Counties about Miller's sexual assault on me." But there is no evidence suggesting that the District Attorney ever informed

No. 14-60282

Rushing of these allegations. Even if a reasonable jury could make this inference, the evidence shows that C.G. Smith did not inform the District Attorney's Office of her allegations until August 2010—several months *after* Ard's alleged assault. Therefore, these allegations would have no bearing on Rushing's knowledge prior to the assault.

These incidents were therefore insufficient to place Rushing on notice that Miller posed a substantial risk of serious harm to female inmates such as Ard. *See Farmer*, 511 U.S. at 837 (stating that for an official to be liable under the deliberate indifference standard, he "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"). Rushing may have been negligent by continuing to employ Miller after two rumors of sexual misconduct had been levied against him. However, because the investigations of these two allegations did not result in any finding of wrongdoing on Miller's part, we cannot say his conduct rose to the level of deliberate indifference. The conclusion that Rushing lacked deliberate indifference is bolstered by evidence that, in light of the rumors, he took steps to prevent male jailers from having one-on-one access to female inmates. Rushing, for example, instituted a policy banning male jailers from entering the female housing area without an accompanying female jailer or dispatcher, and typically scheduled at least one female jailer per shift. Although there is evidence suggesting that these efforts were not foolproof, this does not warrant a finding of deliberate indifference given Rushing's lack of subjective knowledge that Miller posed a danger to female inmates. *See Scott*, 114 F.3d at 55 ("At best, the evidence proffered by Scott may be construed to suggest that the jail could have been managed better, or that the city lacked sufficient prescience to anticipate that a well-trained jailer would, without warning, assault a female detainee. In either

13

event, they do not reflect objective deliberate indifference to Scott's constitutional rights.").[6]

Accordingly, the district court properly granted summary judgment as to Ard's Section 1983 claims.[7]

## C. Claims Under Sections 1985(2) and 1986

In her briefing before us and below, Ard has discussed claims under 42 U.S.C. §§ 1985(2) and 1986. However, she did not allege those claims in her complaint. Even assuming the claims are not precluded on this basis,[8] they fail on the merits.

Section 1985(2) prohibits two categories of conspiracies: (1) "conspiracies directed at the right of participation in federal judicial proceedings," *Montoya*

---

[6] Moreover, Rushing's failure to arrest Miller for neglecting to register as a sex offender *after* his conviction has no bearing on whether Rushing acted with deliberate indifference *prior* to the assault. Nor does the Prison Rape Elimination Act of 2003 have any relevance to this inquiry. Even if Ard is correct that Rushing's policies fail to "adhere to those national standards," Ard is not pursuing a cause of action under that statute.

[7] To the extent Ard attempts to premise her Section 1983 claims on a "failure to train or supervise" theory, that argument has been waived on appeal. Ard mentions this theory briefly in her appellate briefing, noting Rushing's and Lincoln County's lack of specific training policies or manuals, and conclusorily stating that "Rushing failed to *supervise or train* Miller, that this failure caused the violation of [Ard's] rights, and that this failure amounted to deliberate indifference." This is insufficient to properly raise an argument on appeal. *See Scroggins*, 599 F.3d at 446–47 ("It is not enough to merely mention or allude to a legal theory. . . . [M]erely intimating an argument is not the same as pressing it." (internal quotation marks, citation, and brackets omitted)). In any event, this theory would fail on the merits for the same reasons as Ard's "failure to protect" theory. *See Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 381–82 (5th Cir. 2005) ("To satisfy the deliberate indifference prong [under a failure to train or supervise theory], a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation." (internal quotation marks and citation omitted)).

[8] *Compare Baker v. Exxon Chem. Ams.*, 68 F.3d 467, No. 95-30169, 1995 WL 581611, at *4 (5th Cir. Aug. 29, 1995) (per curiam) (unpublished) ("Baker's complaint did not include this claim, and he made no motion to amend the complaint to add such a claim. Accordingly, Baker did not properly present it to the district court, and we will not consider it for the first time on appeal."), *with DeRouen v. Shoneys, Inc.*, 76 F. App'x 532, 533 (5th Cir. 2003) (per curiam) (unpublished) (remanding case "so that [the district court] may consider whether [plaintiff] adequately pleaded . . . a claim in his complaint").

*v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 149 (5th Cir. 2010); and (2) "conspiracies to deny any citizen equal protection of the laws or to injure a citizen for his efforts to ensure the rights of others to equal protection," *Bryant v. Military Dep't of Miss.*, 597 F.3d 678, 687 (5th Cir. 2010). To the extent Ard's claim is premised on the first category, it must fail, as Ard has not contended that her right to participate in judicial proceedings has been impeded. It appears that Ard is not asserting a claim under the second category—which requires a showing of "class-based animus," *id.*—as she concedes that her claim "is not based strictly on discriminatory animus." Even if she were, there is no evidence of any discriminatory animus in the record, thus precluding a claim under this second category.

Ard's claims under Section 1986 must too fail, as a violation of that provision is dependent on an underlying violation of Section 1985. *See* 42 U.S.C. § 1986 ("Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured . . . .); *see also Newberry v. E. Tex. State Univ.*, 161 F.3d 276, 281 n.3 (5th Cir. 1998) ("If the § 1985 claim fails, so must the § 1986 claim.").

### D. Motion for Sanctions and for Reopening of Discovery

The district court did not abuse its discretion in denying sanctions for Appellees' failure to disclose the identity of C.G. Smith, and other evidence relating to her allegations, earlier in the litigation. As the district court noted, there was no evidence "indicat[ing] that Sheriff Rushing, Lincoln County or their counsel was aware of [C.G. Smith's August 2010] statement or had been provided a copy of that statement prior to November 2013, when counsel received a copy of the statement from Miller's attorney in the [C.G.] Smith

No. 14-60282

lawsuit." Ard's contention that C.G. Smith's statement may have been sent to the law firm Wyatt Tarrant & Combs, and that therefore Rushing or Lincoln County could have learned of the allegations from that firm, is mere speculation. The evidence only shows that the statement was given to the District Attorney of Lincoln and Pike counties—an employee of the state, not Lincoln County. *See* Miss. Code. Ann. § 25-31-11(1) ("It shall be the duty of the district attorney to represent the state in all matters coming before the grand juries of the counties within his district . . . ."); *Brooks v. George Cnty.*, 84 F.3d 157, 168 (5th Cir. 1996) ("The district attorney is considered a state official in Mississippi . . . ."). Finally, even if Appellees' failure to identify C.G. Smith and produce her statement was untimely, this conduct is not sanctionable, as the evidence is not germane to the merits of this case. As discussed above, because the evidence shows that C.G. Smith did not provide her statement to the District Attorney until after Ard's assault, the statement has no bearing on whether Rushing or Lincoln County acted with deliberate indifference. "An appellate court need be involved [in discovery rulings] only when a party's substantial rights have been prejudiced and the proceeding would have turned out differently had the evidence been disclosed." *Bass v. City of Jackson*, 540 F. App'x 300, 302 (5th Cir. 2013) (per curiam) (unpublished) (holding that "there is no indication that the district court abused its discretion in denying the discovery/sanction motion").

For these same reasons, Ard has failed to show that the district court abused its discretion in denying her request to reopen discovery as to this issue. A motion to reopen discovery must be supported by "good cause." Fed. R. Civ. P. 16(b)(4). The denial of a motion to reopen discovery should be affirmed where, as here, the movant "fails to explain how the discovery it seeks bears on the grant of summary judgment." *Marathon Fin. Ins., Inc.*, 591 F.3d at 469; *see also Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 261 (5th Cir.

No. 14-60282

2011) ("The appellant bears the burden of proving abuse of discretion and prejudice.").  Because C.G. Smith's allegations are not pertinent to whether Appellees acted with deliberate indifference, the district court did not abuse its discretion in denying the motion to reopen discovery.  *See Haase v. Countrywide Home Loans, Inc.*, 748 F.3d 624, 631 (5th Cir. 2014) ("Discovery rulings are committed to the sound discretion of the trial court and will not be reversed on appeal unless arbitrary or clearly unreasonable." (internal citation and quotation marks omitted)).

## IV.   Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED.